# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

MICHAEL H. HOLLAND, et al.,

        Plaintiffs,

v.    CIVIL ACTION NO. 5:06-cv-00916

KEYROCK ENERGY, INC.,

        Defendant.

### MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Motion for Summary Judgment [Docket 14], filed on June 29, 2007. As per the Court's Scheduling Order [Docket 8], responses to dispositive motions such as the instant summary judgment motion were due on July 18, 2007. On August 10, 2007, Defendant filed a Motion for an Enlargement of Time [Docket 17]. The Court in its Order [Docket 18] entered on August 22, 2007, granted Defendant's motion and extended the deadline for responses to August 31, 2007. Despite this enlargement of time, Defendant has failed to respond to Plaintiffs' motion. Based on Defendant's failure to respond, and for the reasons set forth below, Plaintiffs' motion for summary judgment is **GRANTED**.

### I. PROCEDURAL AND FACTUAL BACKGROUND

The material facts giving rise to this lawsuit are relatively simple and largely undisputed. On October 30, 2006, Plaintiffs Michael H. Holland, Michael W. Buckner, A. Frank Dunham and Elliot A. Segal, as trustees of the United Mine Workers of America (UMWA) 1992 Benefit Plan (1992 Plan), filed the instant lawsuit for unpaid plan premiums against Childress Service Corporation (CSC) and Keyrock Energy, Inc. (Keyrock). (Docket 1.) CSC, a corporation wholly

owned by John J. Childress, Sr., was a coal preparation company operating in Logan County, West Virginia,[1] and a signatory to the 1984, 1988 and 1993 National Bituminous Coal Wage Agreements (NBCWA's).  (Dale R. Stover Aff. ¶ 3 and ex. 1, 2, 3.)  Jurisdiction is proper in this Court pursuant to 26 U.S.C. § 9721(incorporating by reference the provisions of section 4301 of the Employee Retirement Income Security Act of 1974 (ERISA)) and 29 U.S.C. § 1451(d) (giving United States district courts exclusive jurisdiction of ERISA actions regardless of the amount in controversy).

Under the Coal Industry Retiree Health Benefit Act of 1992 (Coal Act), 29 U.S.C. § 9701-22 (2006),[2] the 1992 Plan is required to administer lifetime health benefits to certain coal industry retirees and their dependents.  29 U.S.C. § 9712(b).  The 1992 Plan is largely funded by premiums paid by the "last signatory operator," or last employer for whom the retirees worked under UMWA contract.  26 U.S.C. § 9701.  Jointly and severally with other business related via common ownership ("related persons," under the Coal Act), last signatory operators are required to pay annual and monthly premiums for each qualified retiree. § 9712(d).

According to the 1992 Plan's records, CSC was the last signatory operator for five UMWA retirees.  (Stover aff. ¶ 7.)  Between 1997 and 2007, CSC was also responsible for paying annual prefunding premiums for between nine and twelve potential beneficiaries.  (*Cf. id.* ¶ 5.)  In 2002, however, CSC went out of business and its corporate charter was revoked.  (*Id.* at 4.)  At all times

---

[1] CSC was originally named as a defendant in this case, but was dismissed without prejudice pursuant to the Court's Order [Docket 13] entered May 23, 2007, based on CSC's dissolution as a corporation and insolvency, and Plaintiffs' inability to serve process on CSC.

[2] Subsection (d)(1) of the Coal Act was amended, effective December 20, 2006.  Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, 120 Stat. 2922.  Because the statute had not been amended before the filing of this lawsuit, the Court examines the statute as it existed prior to amendment.

relevant to this lawsuit, CSC was wholly owned by John J. Childress, Sr. (*Id.*) On July 20, 1992,[3] Mr. Childress also owned 100% of the stock of at least one other entity: Keyrock. (Def.'s Resp. to Pl.'s Interrog. 6.) There is no dispute that CSC paid its annual prefunding premiums to the 1992 Plan from 1993 to 1996, and made a partial payment in 1997, (Stover aff. ¶ 5), and that CSC paid its per beneficiary monthly premiums during that same period. (*Id.* ¶ 7.) Nevertheless, it is undisputed that CSC has not made any payments to the 1992 Plan since February 1997. (*Id.* ¶¶ 5, 7.)

## *II. SUMMARY JUDGMENT STANDARD*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party

---

[3] July 20, 1992 is the relevant time for determining whether a person is considered to be a related person under the Coal Act. 26 U.S.C. § 9701(c)(2)(B).

to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 323. Even undisputed facts may give rise to multiple inferences, however, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

"If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added). A failure to respond in and of itself, however, does not show that the moving party is entitled to a judgment as a matter of law. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). "Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what is has before it whether the moving party is entitled to summary judgment as a matter of law." *Id.*

### III. ANALYSIS

*A.     CSC's Liability as a Last Signatory Operator Under the Coal Act*

Plaintiffs have met their burden of showing that no genuine issue of material fact exists regarding CSC's status as last signatory operator of the five retirees at issue here and owes annual

prefunding premiums for up to twelve potential beneficiaries. Defendant has failed to put forth even a scintilla of evidence to contest this status. Under the Coal Act, CSC, as a last signatory operator, is liable for "the payment of a monthly per beneficiary premium . . . for each eligible beneficiary . . . receiving benefits under the [1992 Plan]." 27 U.S.C. § 9712(d)(1)(B). It is also responsible for "the payment of an annual prefunding premium for all eligible and potentially eligible beneficiaries attributable to [it]." § 9712(d)(1)(A). The evidence before the Court is undisputed that CSC failed to pay both the monthly per beneficiary premiums and the annual prefunding premiums since March 15, 1997. (Stover aff. ¶ 7.)

Under the Coal Act, Plaintiffs may also be entitled to interest, liquidated damages, and attorney fees.

> The provisions of section 4301 of the Employee Retirement Income Security Act of 1974 shall apply to any claim arising out of an obligation to pay any amount required to be paid by this chapter in the same manner as any claim arising out of an obligation to pay withdrawal liability under subtitle E of title IV of such Act. For purposes of the preceding sentence, a signatory operator and related persons shall be treated in the same manner as employers.

26 U.S.C. § 9721. Section 4301 of ERISA, 19 U.S.C. § 1451(b), treats "any failure of the employer to make any withdrawal liability payment within the time prescribed . . . as a delinquent contribution." Turning to the section that addresses actions involving delinquent contributions:

> In any action under this subchapter by a fiduciary for or on behalf of a [retirement plan] in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage

5

>  as may be permitted under Federal or State law) of the
>  amount determined by the court under subparagraph (A),
>  (D) reasonable attorney's fees and costs of the action, to be paid by
>  the defendant, and
>  (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Because this lawsuit is brought by the fiduciaries of the 1992 Plan, in addition to the premiums, the Court must award interest, a sum equal to the interest or liquidated damages, whichever is greater, and reasonable attorney's fees and costs. *See Holland v. Cardiff Coal Co.*, 991 F. Supp. 508 (N.D. W. Va. 1997) (awarding interest, liquidated damages, attorney's fees and costs in an action brought under the Coal Act).

> B.  *Defendant's Liability as a Related Person Under the Coal Act*

Plaintiffs allege that Defendant is jointly and severally liable for CSC's debts because it is a "related person" under the Coal Act. 26 U.S.C. § 9712(d)(4) ("A 1988 last signatory operator or last signatory operator described in paragraph (3), and any related person to any such operator, shall be jointly and severally liable with such operator for any amount required to be paid by such operator under this section."). A "related person" to a signatory operator is defined as "a member of the controlled group of corporations (within the meaning of section 52(a)) which includes such signatory operator[.]" 26 U.S.C. § 9701. According to section 52(a), "the term 'controlled group of corporations' has the meaning given to such term by section 1563(a), except that . . . 'more than 50 percent' shall be substituted for 'at least 80 percent' each place it appears in section 1563(a)(1)[.]" Section 1563(a) describes three kids of controlled groups of corporations: (1) parent-subsidiary; (2) brother-sister; and (3) combined.

>A "Brother-sister controlled group" is defined as:
>
>>Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing--
>>
>>"(A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and
>>
>>"(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."

26 U.S.C. § 1563.[4] Plaintiffs have established, and Defendant has presented no evidence to refute that John J. Childress, Sr. owned 100% of the stock of both CSC and Defendant at the relevant time, July 20, 1992. Because of this common ownership, Defendant is considered a related person to CSC under the Coal Act and is jointly and severally liable for all amounts due under the Act.

*C.     Damages*

Based on the applicable section of the Coal Act, 29 U.S.C. §1132, Dale Stover's affidavit, and Defendant's failure to produce any evidence to dispute Plaintiffs' calculations, the Court awards Plaintiffs $884,643.63. This award reflects the statutory damages available under the Coal Act, including: (1) $507,506.17 in unpaid monthly per beneficiary premiums from March 15, 1997 through June 15, 2007; (2) $48,328 in unpaid annual prefunding premiums from 1997 to 2007; (3) $164,404.73 in pre-judgment interest on the unpaid premiums through June 30, 2007; and (4)

---

[4] This subsection was amended in 2004 to strike paragraph (A). *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 900(a), 118 Stat. 1418, 1650. Because section 52(a) requires the statute to be read the same way before and after the amendment, the amendment does not affect the Court's analysis.

$164,404.73 liquidated damages calculated as equal to the amount of interest on the unpaid contributions. Plaintiffs are entitled to post-judgment interest on these damages at the current statutory rate of 4.24%. By statute, the Court is also required to award Plaintiffs reasonable attorney's fees and costs. Plaintiffs are thus ordered to submit an affidavit setting forth their costs and attorney's fees within thirty (30) days of the entry of the accompanying Judgment Order.

### *IV. CONCLUSION*

Because it is undisputed that neither CSC nor Defendant has paid the amount due to the 1992 Plan, there is no genuine issue of material fact for trial. For the reasons stated herein, Plaintiffs' Motion for Summary Judgment [Docket 14] is **GRANTED** and damages awarded in accordance with this opinion. A separate Judgment Order will be entered on this date implementing the Court's ruling.

ENTER: October 19, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE